UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20466-CR-BECERRA/LETT

UNITED STATES OF AMERICA

v.

TIRON ALEXANDER,

    **Defendant.**
_____/

## GOVERNMENT'S MOTION *IN LIMINE*

For over six years, the Defendant pretended to be a flight attendant for several airlines to get free airline tickets, reserving tickets this way over 75 times. For this scheme, he now stands charged with four counts of wire fraud and one count of improper entry to a secure airport area.

Through this Motion, the Government asks this Court to make two pre-trial rulings. *First*, the Court should admit evidence relating to all free flights the Defendant fraudulently secured during the charged conduct period and in the months after he was charged by indictment because these flights are intrinsic evidence of the charged scheme and tend to prove the four substantive wire fraud counts as well. *Second*, the Court should admit evidence showing that the Defendant registered with the Federal Aviation Administration ("FAA") as a flight attendant in 2013 and as a student pilot in 2021, that he maintained flight attendant and student pilot cards that he was arrested carrying despite not actually working as a flight attendant or pilot, and that he ordered replacements of these cards after his arrest. This Court should admit this second category of evidence because it is intrinsic to the charged scheme or (alternatively) other acts evidence showing knowledge, intent, opportunity, and absence of mistake under Federal Rule of Evidence ("FRE") 404(b). In support of these two requested rulings, the Government submits the following:

1

I.  **STATEMENT OF FACTS**

Managing an airline and its personnel is a herculean logistical task. One of the many tasks that airlines face involves getting their flight attendants and pilots where they need to be. To make that easier, many airlines—including Spirit Airlines, Inc. ("Spirit"), Frontier Group Holdings, Inc. ("Frontier"), American Airlines, Inc. ("American"), Allegiant Travel Company ("Allegiant"), United Airlines, Inc. ("United"), Alaska Air Group, Inc. ("Alaska"), ExpressJet Airlines ("ExpressJet"), Delta Air Lines, Inc. ("Delta"), and Avelo Airlines, Inc. ("Avelo")—facilitate each other's pilots and flight attendants reaching their work locations by providing airplane seats free of charge. By way of example, a Delta flight attendant needing to get to New Orleans from Miami to work on a New Orleans-departing flight might receive a free—in industry jargon, a "non-revenue"—ticket on a New Orleans-bound Spirit flight with a spare seat or an available "jumpseat."[1] This industry courtesy helps airlines transport their crew members where they need to be to keep their businesses running smoothly. Up to April 2025, pilots and flight attendants used a website operated and controlled by Spirit called the Team Travel Website ("Team Travel")[2] to reserve these free flights using a verification code known to flight crew members.

From August 2018 to October 2024, the Defendant, who was working for American at the time as a customer service representative, exploited Team Travel to fraudulently secure flight seats meant for flight crews. To do so, he would use the verification code on the Team Travel website to log onto the website and then list himself as a flight attendant for one of at least seven different airlines—Allegiant, Alaska, ExpressJet, Avelo, Delta, Frontier, and American—to get free tickets.

---

[1] A "jumpseat" is a folding chair that flight crew sit in during the flights, which are in the flight crew area.

[2] As of April 2, 2025, Spirit no longer permits pilots and flight attendants of other airlines to use Team Travel. Instead, they are directed to use id90travel.com.

His false claims about being a flight attendant for these companies involved his creating fictitious employee identification numbers and dates of hire, and he would typically reserve these flights the same day that they were scheduled to depart, often just a few hours beforehand. But for all the false information on these reservations, he was always truthful about the information he needed to obtain boarding passes: his name and date of birth. That information is how he was ultimately caught, with his fraudulently secured flights piling up in Spirit's log books until it was large enough for the airline to take notice.

How the Defendant managed to do this—how he learned about the exploit and pulled it off—becomes increasingly clear when looking at his background. The Defendant registered as a flight attendant in 2013 and again in 2015 for relatively unknown shuttle services, which would have given him familiarity with the system flight attendants use to travel to their work locations. As part of the flight attendant registration, he was issued a flight attendant card that would help him pose as one that he continued carrying for the following decade when he never actually worked as a flight attendant. In fact, not only was the Defendant found to be carrying the card when he was arrested in February 2025, but he also even requested and received replacement cards in the weeks following his arrest, after the unsealed indictment would have shown him that he was being charged with fraudulently securing airplane tickets by posing as a flight attendant. As for the Team Travel website, a Spirit representative will testify that the verification code required to register had long become compromised, likely due to the volume of people using the website, and thus was easy to secure for those in the know.

This scheme resulted in the Defendant taking over 75 "non-revenue" flights from four airlines, including the main victim here Spirit. For Spirit alone, the Defendant fraudulently secured 34 flights during the six-year period, five of which are charged in the indictment as substantive

counts—four wire fraud counts for reservations he made, and one count for false entry into a secure area for when he flew out of Fort Lauderdale. But the Defendant's scheme did not conclude when he was indicted in October 2024. Rather, the evidence will show that the Defendant's scheme to deceive the airlines ran to at least late 2024, continuing to take "non-revenue" flights by posing as a flight attendant. Indeed, the Defendant's February 2025 arrest while carrying FAA flight attendant and student pilot cards on his person while attempting to fly from San Francisco to Melbourne, Australia, and his re-ordered the cards within weeks of his arrest, show that not even a federal indictment was going to stop him.

## II.    LEGAL STANDARD

As a general matter, "the prosecution is entitled to prove its case by evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 189 (1997). Yet that evidence must, of course, comply with the FRE. Among the most frequently litigated of those rules is FRE 404(b), which prohibits evidence about a person's "other crime, wrong or act" when offered solely "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But it doesn't stop there: Rule 404(b)(2) lists topics that "other acts" are allowed to prove, such as motive, intent, preparation, plan, and knowledge. Yet before a court analyzes a potential "other act" under Rule 404(b), it must first determine whether the Rule applies at all. That decision involves whether the potential "other act" truly lies outside the scope of the charged crime, which is called "extrinsic" evidence, or instead qualifies as "intrinsic" evidence not subject to Rule 404(b). *See, e.g.*, *United States v. Church*, 955 F.2d 688, 700 (11th Cir. 1992) ("because the evidence is intrinsic, not extrinsic, we do not engage in a Rule 404(b) analysis"). The following will explain two forms of intrinsic evidence—"direct" and "inextricably intertwined" evidence—before addressing extrinsic "other acts" evidence.

4

### A. Intrinsic "Direct" Evidence

"Direct" evidence, as the name implies, covers evidence of a defendant perpetrating the charged crime. "Relevant direct evidence of a crime charged is always admissible unless it falls under a rule of exclusion." *United States v. Troya*, 733 F.3d 1125, 1130 (11th Cir. 2013) (citing *United States v. Rice*, 214 F.3d 1295, 1299 (11th Cir. 2000)); *see also, e.g.*, *United States v. Arney*, 248 F.3d 984, 992 (10th Cir. 2001) ("Evidence is direct or intrinsic to the crime charged if both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." (quotations omitted)). Direct evidence covers a range that's as broad as the ways crime is committed, ranging from text messages plotting a charged offense, *United States v. David*, No. 22-10581, 2023 WL 7437181 *2 (11th Cir. Nov. 9, 2023) (texts discussing logistics of cocaine importation two years before crimes committed), to obtaining items used to commit a charged offense, *see Troya*, 733 F.3d at 1130, to actually using an item (like a firearm) a defendant is charged with possessing, *see United States v. McGill*, 815 F.3d 846, 881-82 (D.C. Cir. 2016) ("acts of violence committed or threatened by appellants during their participation in the conspiracy" held to "not trigger Rule 404(b) at all because [they] qualified as direct evidence"), to post-arrest statements, *see United States v. Bradley*, 924 F.3d 476, 483 (8th Cir. 2019) (post-arrest statement is "direct evidence" and "thus intrinsic to his charged crimes, so Rule 404(b) does not apply.").

### B. Intrinsic "Inextricably Intertwined" Evidence

The other form of intrinsic evidence, "inextricably intertwined" evidence, does not directly bear on the charged crime in the way direct evidence does but is still distinct from "other acts" under Rule 404(b) and thus lies outside its analytical framework. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). The Eleventh Circuit has recognized three forms of evidence that fall within this broad exception to Rule 404(b). First, acts are inextricably intertwined with

the charged offense when they "form[] an integral and natural part of an account of the crime" or that "form[] an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id*. (quotations omitted). Second, evidence is inextricably intertwined if it is "an uncharged offense which arose out of the same transaction or series of transactions as the charged offense." *Id.* (quotations omitted). This category includes crimes committed in furtherance of the charged conduct but not charged in the indictment. *See, e.g.*, *United States v. Joseph*, 978 F.3d 1251, 1263 (11th Cir. 2020) (admitting evidence of identity theft that furthered securing a stash house). Third, evidence is inextricably intertwined if it is "necessary to complete the story of the crime." *Edouard*, 485 F.3d at 1344 (quotations omitted). To this end, evidence that is "not part of the crime charged but [that] pertain[s] to the chain of events explaining the context, motive, and set-up of the crime[] is properly admitted if linked in time and circumstances with the charged crime." *Id*. (quotations omitted).

### C. *Extrinsic "Other Acts" 404(b) Evidence Generally*

Other acts that are relevant but that lie outside the scope of intrinsic evidence are extrinsic. "Extrinsic" evidence is reviewed under Rule 404(b), but as the Eleventh Circuit has stressed, is often admissible. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008); *see also United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003). That's so because Rule 404(b)'s prohibition is specific and limited: it prohibits "other acts" evidence <u>solely</u> to show that a defendant acted in accordance with that prior act but permits it to "prov[e] motive, opportunity, intent, preparation, knowledge, identity, absence of mistake, or lack of accident." FRE 404(b)(2). Indeed, "to avoid the strictures of Rule 404(b), all the government need do is suggest a logical hypothesis of the relevance of the evidence for a purpose other than to demonstrate his propensity to act in a particular manner." *United States v. Krout*, 66 F.3d 1420, 1431 (11th Cir. 1995). As to relevance,

6

the evidence must simply have "any tendency to make a fact more or less probable than it would be without the evidence" and be "of consequence to determining the action." Fed. R. Evid. 401. When evidence meets that low bar, finding the probative value of the evidence to be outweighed by its prejudicial effect "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility," *United States v. Nerey*, 877 F.3d 956, 975 (11th Cir. 2017) (citation omitted), with any court having a concern about prejudice charged with "maximizing [the evidence's] probative value and minimizing its undue prejudicial impact" rather than excluding it, *see United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002). "To determine whether the evidence is more probative than prejudicial, a district court must engage in a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009) (cleaned up). Courts should further consider whether a limiting instruction can resolve the issue. *See, e.g.*, *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997).

These principles apply to Rule 404(b) evidence just as it does to all evidence at trial. To those ends, admitting an act under Rule 404(b) requires the moving party to show three things: "(1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *Edouard*, 485 F.3d at 1344.

### D. The Importance of Specific Intent in Evaluating Rule 404(b) Evidence

The Indictment's four wire fraud counts require the Government to prove the Defendant's "specific intent" to defraud Spirit. *See, e.g.*, *United States v. Maxwell*, 579 F.3d 1282, 1302 (11th

7

Cir. 2009) ("the specific intent required under the mail and wire fraud statutes is the intent to defraud"). The "specific intent" *mens rea* for this crime matters because it affects the probative value of extrinsic "other acts" evidence. For charges involving specific intent, "the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent," *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011) (quotations omitted), whether or not lacking intent is an anticipated defense, *see United States v. Bilderbeck*, 163 F.3d 971, 977 (6th Cir. 1999) ("the prosecutor may use 404(b) evidence to prove that the defendant acted with specific intent notwithstanding that the defense was lack of possession, not lack of intent to distribute."). Indeed, "[a]fter a defendant puts his intent at issue by pleading not guilty, the strength of the government's case on intent must be 'overwhelming' in order to render extrinsic evidence on intent unnecessary." *United States v. Moore*, 535 F. App'x 795, 798 (11th Cir. 2013); *see also United States v. Hicks,* 798 F.2d 446, 451 (11th Cir. 1986) ("The greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice.").

**III.    ARGUMENT**

The Government's case-in-chief will show that the Defendant defrauded Spirit and other airlines over the course of more than six years by falsely claiming that he was a flight attendant to for at least seven different airlines to secure free flights. To that end, the primary witnesses and records here will come from Spirit, with its employees testifying about Team Travel, their records showing the Defendant's abuse of Team Travel, and their investigation of the Defendant having led to this case. In particular, Spirit's computer records will show, among other things, that the Defendant selected that he was a flight attendant, that he entered false dates of hire and employee identification numbers, and that he took the flights. To prove up the full scope of the charged scheme and how the Defendant perpetrated it, though, the Government will also present other

evidence to prove the Defendant's deceit—namely, evidence from American about his employment status, evidence from the FAA and the Defendant's arresting officer relating to the his flight attendant and student pilot registration and card possession, CCTV footage showing him to have been present at some of the flights, and evidence from other airlines showing his "non-revenue" travel that, as with Spirit, spanned the charged time period along with the months after he was charged here and showing that he was not employed with them as a flight attendant like he claimed. Simply put, the Government's case inherently, unavoidably involves the Defendant's dishonesty, and doing so demands that it be permitted to prove the full scope of the Defendant's scheme. To that end, the Government respectfully moves this Court to make the following two pretrial rulings.

> A. **The Defendant's "Non-Revenue" Flights During the Charged Period and the Months After Are Intrinsic to the Five Charged Offenses.**

*First*, the Court should permit the Government to introduce evidence of the over 75 "non-revenue" flight reservations the Defendant took during the charged period and shortly thereafter as direct evidence of the Defendant's scheme or, alternatively, a natural and necessary part of the story of what happened here and thus admissible as inextricably intertwined evidence. The Eleventh Circuit, like others, has long recognized that uncharged instances of fraud are "intrinsic evidence of the same series of transactions as the charged offenses [when] [t]he charged offenses were not isolated acts, but rather, were part of a series of transactions involving the same principal actors, in the same roles, employing the same modus operandi." *United States v. Muscatell*, 42 F.3d 627, 630 (11th Cir. 1995).[3] And this makes sense: many schemes, like the Defendant's here,

---

[3] *See also, e.g.*, *United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015) (uncharged victims could testify because part of the same scheme); *United States v. Pearson*, 832 F. App'x 679, 688 (11th Cir. 2020) (same); *United States v. Zeidman*, 540 F.2d 314, 317 (7th Cir. 1976) (fraudulent conduct had "sufficiently close nexus with one another" to be "fairly characterized as one

9

involve hundreds or even thousands of transactions, and individually charging each one would result in a needlessly tedious charging instrument and juries pondering over hundreds or thousands of counts. That's why indictments like the one here charge a broader scheme, with the Defendant charged with perpetrating his from "on or about August 14, 2018, and continuing through at least on or about September 14, 2024" in the indictment, DE 3:2, and with the four substantive wire fraud counts serving as part-and-parcel of the charged scheme.

Here, the Government's case-in-chief will consist of records from Spirit, United, American, and Southwest that reflect well over 75 "non-revenue" flights that the Defendant took during the charged conspiracy and the months thereafter. These flights are relevant to the charged scheme generally as well as the four substantive wire fraud charges specifically in at least three respects. *First*, the full scope of the Defendant's fraudulently secured flights will tend to prove his intent to defraud and absence of mistake by showing his consistent and fraudulent modus operandi, with the Defendant receiving a non-revenue flight from an airline when, as they will testify, he was not entitled to the flights. The Government will further prove that approximately 34 of these flights were stolen from Spirit through the Team Travel portal using the same methodology: the Defendant's travel information linked with being a flight attendant and a false claim to being a flight attendant for an airline. *Second*, the flights will also prove identity, with the Defendant captured in CCTV video boarding some of the flights and also using consistent identifiers in taking the flights, including name and date of birth but also distinctive email addresses. *Third*, the

---

scheme."); *United States v. Bajoghli*, 785 F.3d 957, 962–63 (4th Cir. 2015) ("[W]hen the government charges a defendant under § 1347 with a scheme to defraud and elects to charge only some of the executions of that scheme, its election does not limit its proof to only the charged executions. It may introduce other evidence of uncharged executions to prove the scheme."); *United States v. Pless*, 79 F.3d 1217, 1220 (D.C. Cir. 1996) ("it is not necessary for the government to charge every single act of execution of the scheme in order to prove the whole scheme.").

approximately 34 times that the Defendant defrauded Spirit specifically through the Team Travel website will further prove the Defendant's deceit through his listing seven different airlines—Allegiant, Alaska, ExpressJet, Avelo, Delta, Frontier, and American—as his employer as a flight attendant along with bogus employee ID numbers. All of this will show the Defendant's intent to defraud Spirit as charged, and it is all intrinsic evidence because it is precisely the scheme that the Indictment charges him with perpetrating. For those reasons and because there is no undue prejudice that would result from admitting this evidence, this evidence is squarely admissible as intrinsic to the scheme.

That said, this evidence would be admissible even were the Court to subject it to FRE 404(b) analysis because it meets all three FRE 404(b) requirements under Eleventh Circuit law. *See Edouard*, 485 F.3d at 1344. *First* as to relevance, the Defendant's other flights that were part of the scheme are relevant to prove identity, intent, knowledge, and absence of mistake or accident for the reasons set forth above—all permissible showings under FRE 404(b). *Second* as to proof to a preponderance standard, the jury could easily find the Defendant to have reserved these flights for free to a preponderance standard because the Government has the records from the airlines, which it will present at trial and which contain the Defendant's name and date of birth, as well as consistent email identifiers used across the airlines. The Government also anticipates having witness testimony regarding the Defendant's "non-revenue" flight reservations as well. Which is all to say that each airline will have records that total well over 75 flights that show the Defendant to have executed this scheme in a consistent way. And *third*, as to prejudice, there is no reason to believe that evidence of the Defendant's many free airline reservations and trips will inflame the jury or otherwise unduly prejudice him as to the charges he faces here; to the contrary, these airline reservations <u>are</u> the scheme he's charged with perpetrating and, in that respect, are only as

prejudicial to his case as they are incriminating as to the precise charges he faces here. For all those reasons, this Court should permit the Government to prove the Defendant's "non-revenue" flights that he took in furtherance of this scheme during the charged period as well as after he was indicted.

> **B. *The Defendant's Being Registered as a Flight Attendant and Student Pilot During the Charged Conduct Period and His Being Arrested with Flight Attendant and Pilot Cards along with his American IDs Despite Being Suspended Without Pay Are Admissible as Inextricably Intertwined or, Alternatively, FRE 404(b) Evidence.***

*Second*, this Court should admit the Defendant being registered as a flight attendant and student pilot with the FAA during the charged conduct period as intrinsic evidence pertaining to the scheme. Just as the Eleventh Circuit has joined other courts in holding that other transactions that are part of a scheme to be admissible intrinsic evidence, so too have the Eleventh Circuit and other appellate courts uniformly held that other conduct tied to the scheme is intrinsic evidence. *See, e.g.*, *United States v. Grow*, 977 F.3d 1310, 1326-27 (11th Cir. 2020) (acts in furtherance of fraud include helping create a survey for patients in healthcare fraud case); *United States v. Fuertes*, 723 F. App'x 733, 737 (11th Cir. 2018) (evidence of prescription fraud scheme intrinsic despite the defendant not being charged with drug trafficking); *United States v. Cammarata*, 129 F.4th 193, 212 (3d Cir. 2025) (failure to report fraud-derived income on taxes intrinsic to scheme). This evidence qualifies as intrinsic evidence if it is "necessary to complete the story of the crime" or is "not part of the crime charged but [that] pertain[s] to the chain of events explaining the context, motive, and set-up of the crime[] … if linked in time and circumstances with the charged crime." *Edouard*, 485 F.3d at 1344 (quotations omitted).

Here, the Defendant's scheme was to pose as a flight crew member for these airlines, which involved his registering as a flight attendant through the Team Travel portal and otherwise misrepresenting himself to be a flight attendant for a variety of airlines. When the Defendant was arrested (and still perpetrating this scheme), he was found to have student pilot and flight attendant

ID cards on his person when he was arrested in February 2025, along with American ID cards when he had been placed on indefinite unpaid leave almost exactly a year earlier. The Government intends to introduce this evidence because it is part of the scheme: the Defendant was posing as a flight attendant, and his having registered as a flight attendant and student pilot and carrying around these cards claiming him to be one is probative of his intent and opportunity to commit the offense. Moreover, this evidence is relevant in at least four respects. *First*, on identity, the Defendant possessing flight attendant and student pilot ID cards when he was not actually employed in either capacity is powerful circumstantial evidence that he is the person who was posing as a flight attendant, which would forestall any defense he might have that it was someone else. *Second*, as to knowledge and intent, this evidence shows the Defendant going to the trouble of having FAA flight attendant and pilot cards issued to him and on his person when he has no reason to carry them other than to perpetrate this fraud, which tends to prove his guilty state of mind. And *third* as to opportunity, the Defendant being a registered flight attendant and student pilot with the FAA shows his knowledge of flight attendant registration systems, which is precisely what he exploited through Team Travel. *Fourth*, as for lack of accident or mistake, the Defendant possessing ID cards representing himself to be precisely the type of special employee that he was falsely claiming to be on Team Travel tends to prove that he didn't do so through some misunderstanding or mistake; that rather, this was a long-running, calculated scheme of his to get free travel benefits.

And as with his other flights, this evidence would be admissible even were the Court to subject it to FRE 404(b) analysis in all three respects required under Eleventh Circuit law. *See Edouard*, 485 F.3d at 1344. *First* as to relevance, the Defendant's possessing flight attendant and student pilot cards are relevant to prove identity, intent, knowledge, opportunity, and absence of mistake or accident for the reasons set forth above—all permissible showings under FRE 404(b).

*Second* as to proof to a preponderance standard, the jury could easily find the Defendant to have possessed these cards because they will see the cards for themselves as well as the FAA records showing the Defendant to have secured the cards and re-ordered them after they were seized at his arrest. And *third*, as to prejudice, there is no reason to believe that evidence of the Defendant's FAA card possession will inflame the jury or otherwise unduly prejudice him as to the charges he faces here; to the contrary, these cards are part-and-parcel of his scheme to secure free travel by posing as a flight crew member, and in that way, any prejudice they cause will be the appropriate kind—evidence showing him to have committed the scheme. For all those reasons, this Court should admit the Defendant's possession of the flight attendant and student pilot IDs as intrinsic to the crime charged or, alternatively, permissible FRE 404(b) evidence.

IV. **CONCLUSION**

For these reasons, the United States respectfully requests that the Court admit evidence of (1) the many uncharged "non-revenue" flights that the Defendant took as part of his scheme and (2) the student pilot and flight attendant cards that the Defendant had issued to him throughout the conduct period, was found to be carrying at the time of his arrest, and re-ordered after his arrest, as well as his American ID cards he carried despite being suspended without pay.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: April 18, 2025          By: */s/ Zachary A. Keller*
                              ZACHARY A. KELLER
                              Assistant United States Attorney
                              U.S. Attorney's Office – SDFL
                              Court No: A5502767
                              99 NE 4th Street, 6th Floor
                              Miami, Florida 33132
                              Tel: (305) 961-9023
                              Email: zachary.keller@usdoj.gov

**CERTIFICATE OF CONFERENCE**

I HEREBY CERTIFY that on April 16-17, 2025, I conferred with Eboni Blenman, counsel for the Defendant, who indicated that the defense opposes this motion.

*/s/ Zachary A. Keller*
ZACHARY A. KELLER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 18, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ Zachary A. Keller*
ZACHARY A. KELLER
Assistant United States Attorney